7 17579

**ORDER NO. : 2507016159-3**

# EXHIBIT A

The land referred to is situated in the County of San Diego, City of San Diego, State of California, and is described as follows:

Lot 32 and Southerly 5 feet of Lot 31 of Catoctin Tract Unit No. 2, in the City of San Diego, County of San Diego, State of California, according to Map No. 2937, filed in the Office of the County Recorder of San Diego County December 9, 1952.

EXHIBIT A

DOC # 2006-0533207

This document was prepared by HOMECOMINGS FINANCIAL NETWORK, INC
1650 Corporate Circle, Suite 100 Petaluma, CA 94954

Please return this document after recording to:
HOMECOMINGS FINANCIAL NETWORK, INC.
One Meridian Crossing, Ste. 100
Minneapolis MN 55423

JUL 27, 2006    3:50 PM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:         27.00
PAGES:          7         DA:    1

RECORDING REQUESTED BY
OLD REPUBLIC TITLE COMPANY - SD

17573

——————— State of California ———————                    ——— Space Above This Line For Recording Data ———

# DEED OF TRUST
(With Future Advance Clause)    MIN: 100062604298092620

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is .....JULY 25TH, 2006.....................
and the parties, their addresses and tax identification numbers, if required, are as follows:
TRUSTOR:    MARIANO R. CONTRERAS, ~~AN UNMARRIED MAN~~
            MRC        A SINGLE MAN

☐ If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and acknowledgments.

TRUSTEE:    OLD REPUBLIC TITLE COMPANY
            9645 GRANITE RIDGE DRIVEW, SUITE 300
            SAN DIEGO, CA 92123

LENDER:     HOMECOMINGS FINANCIAL NETWORK, INC.
            P.O. BOX 808024
            PETALUMA, CA 94975

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

2. **CONVEYANCE.** The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
Legal description attached hereto and made a part hereof

The property is located in ...SAN DIEGO....................... at ...5179 LEO STREET......................
                                    (County)
......................................, ...SAN DIEGO..........., California 92115......
         (Address)                              (City)                                  (ZIP Code)
Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). Trustor understands and agrees that MERS holds only legal title to the interests granted by Trustor in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender, including but not limited to, releasing and canceling this Security Instrument.

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ .........109,000.00......................... This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

CALIFORNIA - DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE)                                        (page 1 of 6)
Exper® ©1994 Bankers Systems, Inc., St. Cloud, MN Form RFC-REDT-CA 4/2/2004  -  MFCA7086 (09/2004) / 042-980926-2

**EXHIBIT B**

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*
    Borrower(s) Promissory Note to Lender dated    JULY 25TH, 2006    in the principal sum of U.S. $    109,000.00 , with interest thereon, providing for monthly installments of principal and interest, with the balance of indebtedness, if not sooner paid, due and payable on   AUGUST 1ST, 2031.

    B. All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Trustor in favor of Lender executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

    C. All obligations Trustor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Trustor and Lender.

    D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

    This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees:
    A. To make all payments when due and to perform or comply with all covenants.

    B. To promptly deliver to Lender any notices that Trustor receives from the holder.

    C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor will keep the Property free of noxious weeds and grasses. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

*(page 2 of 6)*

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Trustor will promptly provide Lender with true and correct copies of all existing and future Leases. Trustor may collect, receive, enjoy and use the Rents so long as Trustor is not in default under the terms of this Security Instrument.

Trustor agrees that this assignment is immediately effective between the parties to this Security Instrument. Trustor agrees that this assignment is effective as to third parties when Lender or Trustee takes affirmative action prescribed by law, and that this assignment will remain in effect during any redemption period until the Secured Debt is satisfied. Trustor agrees that Lender or Trustee may take actual possession of the property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Trustor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Trustor will endorse and deliver to Lender any payment of Rents in Trustor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Trustor warrants that no default exists under the Leases or any applicable landlord/tenant law. Trustor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Trustor will be in default if any party obligated on the Secured Debt fails to make payment when due. Trustor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Trustor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Trustor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

©1994 Bankers Systems, Inc., St. Cloud, MN Form RFC-REDT-CA 4/2/2004   ..   MFCA7086 (09/2004) / 042-980928-2

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Trustor agrees to pay all of Lender's expenses if Trustor breaches any covenant in this Security Instrument. Trustor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

    Trustor represents, warrants and agrees that:

    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

    B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

    C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.

    D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

    All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

*(page 4 of 6)*

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Trustor, Trustor agrees to waive any rights that may prevent Lender from bringing any action or claim against Trustor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Trustor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Trustor's consent. Such a change will not release Trustor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

25. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Trustor shall be deemed to have requested a copy of any notice of default and of any notice of sale hereunder.

26. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

27. **STATEMENT OF OBLIGATION.** Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California.

28. **SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person expressly agrees that recourse may be had against his or her separate property.

29. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:
   ☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.
   ☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.
   ☐ **Fixture Filing.** Trustor grants to Lender a security interest in all goods that Trustor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.
   ☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
      ☐ Condominium Rider   ☐ Planned Unit Development Rider   ☐ Other ......................................................
   ☐ **Additional Terms.**

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

................................................................ 7/06/25 ..........................................................................
(Signature) MARIANO R. CONTRERAS       (Date)       (Signature)                                         (Date)

**ACKNOWLEDGMENT:**
(Individual) STATE OF ......California..................., COUNTY OF .....San Diego........................} ss.
On this .....25..... day of .....July..... 2006..... before me ......Chris McGinnis........
a notary public, personally appeared .................MARIANO R. CONTRERAS.........................
.....................................................................................................................................
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

[Seal: CHRIS MC GINNIS COMM. #1383079 NOTARY PUBLIC-CALIFORNIA SAN DIEGO COUNTY My Commission Expires NOVEMBER 3, 2006]

Signature ...........................................................
                Name (typed or printed) CHRIS MCGinnis

My commission expires: ......03 NOV 06.........................

---

**REQUEST FOR FULL RECONVEYANCE**

To Trustee:

The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of ............................................. County, State of California, in book ........................., page .............. of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: ........................................................   ..............................................................................

APN 1: 467-123-02-00
Assessor's Identification Number ........................-...................-...................
APN 2:

# NOTE - Initial Period Interest Only

JULY 25TH, 2006                                         SAN DIEGO, California
*Date*                                                  *City*

5179 LEO STREET            SAN DIEGO            CA     92115
*Property Address*         *City*               *State*     *ZIP Code*

## 1. DEFINITIONS:

The headings at the beginning of each section are for convenience only and are not to be used in interpreting the text of the section. "☒" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). The Lender is HOMECOMINGS FINANCIAL NETWORK, INC. "You" or "your" means the Lender and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY:

For value received, I promise to pay to you, or your order, the **PRINCIPAL** sum of ONE HUNDRED NINE THOUSAND AND NO/100 ............................................. Dollars $ 109,000.00, plus interest. No additional advances are contemplated under this note.

## 3. INTEREST:

I agree to pay interest on the outstanding principal balance at the rate of 11.3750 % per year until the full amount of principal has been paid. Interest accrues on the principal remaining unpaid from time to time, until paid in full. The interest rate and other charges on this loan will never exceed the highest rate or charge allowed by law for this loan.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, at the rate specified in this note.

## 4. PAYMENTS:

I agree to pay this note in monthly payments. I will make monthly payments on the FIRST day of each month beginning on SEPTEMBER 1ST, 2006. During the initial five year period, my monthly payment will consist of interest only. The monthly payment during the Interest-Only Period will be $ 1,033.23 until AUGUST 1ST, 2011. Beginning on SEPTEMBER 1ST, 2011, the monthly payment will consist of principal and interest in the amount of $ 1,153.03. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. Unless otherwise required by law, each payment I make on this loan will be applied first to any charges I owe you other than principal and interest, then to interest that is due and finally to principal. The final payment of the entire unpaid balance will be due AUGUST 1ST, 2031, which is called the "Maturity Date."

The actual amount of my final payment will depend on my payment record. If any payment due under this loan does not equal or exceed the amount of interest due, you may, at your option, increase the amount of the payment due and all future payments to an amount that will pay off this loan in equal payments over the remaining term of this loan, subject to any balloon payment indicated below.

I will make my monthly payments at P.O. BOX 808024, PETALUMA, CA 94975 ........................................................ or at a different place if required by you.

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell you in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying a prepayment charge. You will use my prepayments to reduce the amount of principal that I owe under this note. However, you may apply my prepayment to the accrued and unpaid interest on the prepayment amount, before applying my prepayment to reduce the principal amount of this note. If I make a partial prepayment, there will be no changes in the due date of my monthly payment unless you agree in writing to those changes. However, if the partial prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and interest required under this note will be paid prior to the Maturity Date.

**LATE CHARGE:** If a payment is made more than 15 calendar days after it is due, I agree to pay a late charge of 5% of my overdue principal and interest or $5.00, whichever is less. I will pay this late charge only once on each late payment.

## 5. SECURITY:

My obligations under this note are separately secured by a Deed of Trust dated the same date as this note.

As stated in that Deed of Trust "Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released."

Any present or future agreement securing any other debt I owe you also will secure the payment of this loan. Property securing another debt will not secure this loan if such property is my principal dwelling and you fail to provide any required notice of right of rescission. Also, property securing another debt will not secure this loan to the extent such property is in household goods.

(page 1 of 2)

*Initials* KFL   *Initials*

Experº © 1984, 1991, 1996 Bankers Systems, Inc., St. Cloud, MN Form RFCCESMNICA-9/2/2004
MFCA6008 (01/2006) / 042-980926-2

CERTIFIED TO BE A TRUE
AND EXACT COPY OF THE ORIGINAL.
SAN DIEGO ESCROW, INC.
BY _____

31352

6. **COMMISSIONS:** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services, that I buy through you or your affiliate.

7. **PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

8. **REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this agreement.

9. **DEFAULT:** Subject to any limitations in the "REAL ESTATE AND RESIDENCE SECURITY" paragraph above, I will be in default on this note if any of the following occur:
   (1) I fail to make a payment on time or in the amount due;
   (2) I fail to perform any condition or keep any promise of this or any agreement I have made with you.

10. **REMEDIES:** Subject to any limitations in the "REAL ESTATE AND RESIDENCE SECURITY" section above, if I am in default on this loan or any agreement securing this loan, you may:
    (1) Make unpaid principal, earned interest and all other agreed charges I owe you under this loan immediately due;
    (2) Demand more security or new parties obligated to pay this loan (or both) in return for not using any other remedy; and
    (3) Use any remedy you have under state or federal law.

By choosing any one or more of these remedies you do not give up your right to use another remedy later. By deciding not to use any remedy should I be in default, you do not give up your right to consider the event a default if it happens again.

11. **COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

12. **WAIVER:** I waive (to the extent permitted by law) demand, presentment, protest, notice of dishonor and notice of protest.

13. **OBLIGATIONS INDEPENDENT:** I understand that my obligation to pay all of the amounts owed under this loan is independent of the obligation of any other person who has also agreed to pay it. You may, without notice, release me or any of us, give up any right you may have against any of us, extend new credit to any of us, or renew or change this note one or more times and for any term, and I will still be obligated to pay this loan. You may, without notice, fail to perfect your security interest in, impair, or release any security and I will still be obligated to pay this loan.

14. **CREDIT INFORMATION:** I agree that from time to time you may receive credit information about me from others, including other lenders and credit reporting agencies. I agree that you may furnish on a regular basis credit and experience information regarding my loan to others seeking such information. To the extent permitted by law, I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others. I will give you any financial statements or information that you feel is necessary. All financial statements and information I give you will be correct and complete.

15. **PURCHASE MONEY LOAN:** If this is a purchase money loan, you may include the name of the seller on the check or draft for this loan.

...........................................................................................................................................................

I understand that for the Interest-Only Period my monthly payments will not reduce the principal balance on my loan. After 5 years if I only make my minimum payment, my principal balance will not be reduced. My monthly payments after the Interest-Only Period will consist of both principal and interest and will be higher unless I have made additional payments to reduce the principal balance.

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE.** I have received a copy of this note.

| ........................................... (Seal) | 2006/07/25 ........................................... (Seal) |
| Date   MARIANO R. CONTRERAS   -Borrower | Date   -Borrower |

| ........................................... (Seal) | ........................................... (Seal) |
| Date   -Borrower | Date   -Borrower |

*(Sign Original Only)*

APN # **2507016159-3**

When recorded mail to:

JP Morgan Chase Bank, National Association
7255 Baymeadows Way
Jacksonville, FL 32256

_____
Space above this line for recorders use

M&H# **CA09-36532**

Loan # **XXXXXX4625**
MERS # **100062604298092620**

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to, **JPMorgan Chase Bank National Association** all beneficial interest under that certain Deed of Trust dated **07/25/2006** executed by **Mariano R Contreras, a single man,** as Trustor(s) to **Old Republic Title Company**, as Trustee and recorded as Instrument No. **2006-0533207** on 7/27/2006, in the office of the County Recorder of **San Diego** County, **CA** commonly referred to as 5179 Leo Street San Diego, CA 92115 and legally describing land therein as:
**Lot 32 and Southerly 5 feet of Lot 31 of Catoctin Tract Unit No. 2, in the City of San Diego, County of San Diego, State of California, according to Map No. 2937, filed in the Office of the County Recorder of San Diego County December 9, 1952.**
together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Dated: **AUG 2 4 2009**

Mortgage Electronic Registration Systems, Inc. as nominee for Homecomings Financial Network, Inc.

Name: _Barbara Hindman_
Title: Vice President

State of **Florida**
County of **Duval** ) ss

On **AUG 2 4 2009** (date) before me, **Yolanda Sbaffoni** _____ (Insert name of Notary Public and Title) the undersigned Notary Public, personally appeared **Barbara Hindman** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me the he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY of PERJURY under the laws of the State of **Florida** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____ (Seal)
Name:
Notary Commission Expiration: 1/13/13

YOLANDA SBAFFONI
Notary Public - State of Florida
My Comm. Expires Jan 13, 2013
Commission # DD 851409

**EXHIBIT C**

B6A (Official Form 6A) (12/07)

In re **Mariano R Contreras**, Case No. _____

Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Single Family Home: 3 Bedroom 2 Baths**<br>**5179 Leo St,**<br>**San Diego, Ca 92115** | | - | 422,000.00 | 565,424.00 |

| | Sub-Total > | 422,000.00 | (Total of this page) |
|---|---|---|---|
| | Total > | 422,000.00 | |

**0** continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037    Best Case Bankruptcy



EXHIBIT D

B6D (Official Form 6D) (12/07)

In re **Mariano R Contreras** , Case No. _____

Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community H/W/J/C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **xxxxxx9247** <br><br> **Gmac Mortgage Llc <br> Po Box 4622 <br> Waterloo, IA 50704** | - | | **Opened 7/01/06 Last Active 12/23/08** <br><br> **First Mortgage** <br><br> **Single Family Home: 3 Bedroom 2 Baths <br> 5179 Leo St, <br> San Diego, Ca 92115** | | | | | |
| | | | Value $ 422,000.00 | | | | 457,282.00 | 143,424.00 |
| Account No. **xxxxxxxxx4625** <br><br> **Washington Mutual Fa <br> 9451 Corbin Avenue <br> Northridge, CA 91328** | - | | **Opened 7/01/06 Last Active 1/29/09** <br><br> **Second Mortgage** <br><br> **Single Family Home: 3 Bedroom 2 Baths <br> 5179 Leo St, <br> San Diego, Ca 92115** | | | | | |
| | | | Value $ 422,000.00 | | | | 108,142.00 | 0.00 |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |
| **0** continuation sheets attached | | | Subtotal (Total of this page) | | | | 565,424.00 | 143,424.00 |
| | | | Total (Report on Summary of Schedules) | | | | 565,424.00 | 143,424.00 |

EXHIBIT E